## No. 16,286.

WESTERN SURETY COMPANY *v.* THE PEOPLE.
(208 P. [2d] 1164)

Decided August 5, 1949.

Messrs. STRACHAN, HORN & ANDERSON, for plaintiff in error.

Mr. JOHN W. METZGER, Attorney General, Mr. JOSEPH E. NEWMAN, Deputy, Mr. PAUL M. HUPP, Assistant, for the people.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

MARCH 20, 1948, William Paul Wilson, against whom an information previously had been filed charging him with the crime of burglary, filed a bond in the amount of $1,500 conditioned for his appearance in the district

court of Fremont county on April 12, 1948. Plaintiff in error, Western Surety Company, a corporation, signed as surety on the bond.

April 8, 1948, Wilson was shot in Cushing, Oklahoma. April 12, 1948, at ten o'clock a.m., when he should have appeared in the district court of Fremont county, he was in a hospital in Oklahoma City, Oklahoma, and died there the ensuing day, April 13. Upon his failure to appear in the district court of Fremont county, his bond was ordered forfeited and June 4, 1948, writ of scire facias was served upon plaintiff in error to show cause why execution should not issue. June 24, 1948, after an answer to the writ had been filed and subsequent arguments had, judgment was entered against Western Surety Company in favor of the People in the amount of $1,500 and costs. To reverse that judgment the Western Surety Company has sued out a writ of error and its counsel has filed an agreed statement of facts, specification of points and brief, in response to which the attorney general, on behalf of defendant in error, has filed a joinder on request for reversal of the trial court's judgment.

■ As stated in the brief of counsel for plaintiff in error, the one question to be determined is: "After forfeiture of bond by reason of nonappearance of the defendant and prior to judgment thereon, the principal dies, should the surety be discharged upon Writ of Scire Facias?"

In *Chase v. People*, 2 Colo. 481, this court held that illness was a good excuse for nonappearance in court of the principal on a bond, and set aside a judgment of forfeiture against the surety. In *Smith v. People*, 67 Colo. 452, 184 Pac. 372, 7 A.L.R. 392, defendant principal was, on the return day of the recognizance, insane and in the custody of a sheriff in the state of Texas. Judgment entered, as in the instant case, against the sureties, and on review we reversed the judgment. That case, in addition to being the subject of an annotation in

American Law Reports, also is cited in 6 American Jurisprudence, page 100, section 132, as authority for the statement: "In criminal cases it seems to be well established that the sureties may be exonerated from liability for failure to produce the principal at the trial when such failure is due to the fact that the principal is in confinement because of his insanity."

It would seem to be a fickle and illogical system of jurisprudence to exonerate the surety for the nonappearance of its principal by reason of confinement due to either mental or physical illness and not to exonerate it when death—the final terminus of all mental and physical ills—had overtaken the principal. We know of no jurisdiction where such has been the ruling.

*People v. Manning,* 8 Cowen 296, 18 Am. Dec. 451; annotation: "What will Excuse Surety or Bail from Producing Principal," 99 Am. Dec. 216, 217; annotation: "Sickness or Death of Principal as Exonerating Sureties on Criminal Bail Bond," Ann. Cas. 1915 B, page 434; are cited among other references to support the following statement in 6 American Jurisprudence, page 101, section 136: "An act of God rendering the performance of the condition in a recognizance or bond impossible always discharges the party bound from performing the obligation. Thus, where the principal in a bail bond dies before judgment is rendered against the surety, so as to put it out of the power of the latter to surrender him in execution, the bail is discharged. This is true, notwithstanding the bond may have been forfeited before death, if the death occurs before judgment on the bond. Moreover, a judgment entered after the death of the principal may be vacated. The bail is not entitled as of right, however, to claim exoneration by reason of the death of the principal after forfeiture; and it seems that if a long period of time has elapsed after the forfeiture of the bond before the death of the principal occurs—as, for example, two years—the death does not constitute a defense to an action on the bond."

The philosophy which we adopted in *People v. Pollock,* 65 Colo. 275, 176 Pac. 329, would seem to support the foregoing statement, for there we quoted with approval from *United States v. Lee* (D. C.), 170 Fed. 613, the following: "The purpose of a recognizance is not to enrich the treasury, but to serve the convenience of the party accused but not convicted, without interfering with or defeating the administration of justice. Sureties, therefore, should be persons of sufficient financial ability and of sufficient vigilance to secure the appearance and prevent the absconding of the accused."

In *Smith v. People, supra,* we again stated that enriching the public treasury is not the purpose of the bond. A bail bond is not insurance against the death or mental or physical illness of the principal. It would seem that the proceeding to exonerate the surety in the instant case had been brought in apt time to conform to our opinions in *Van Gilder v. Denver,* 104 Colo. 76, 89 P. (2d) 529, and *Scott v. People,* 64 Colo. 396, 172 Pac. 9, 3 A.L.R. 176.

We conclude that the attorney general acted properly in joining in the request for reversal of the judgment of the trial court. Accordingly, the judgment is reversed.

Mr. Chief Justice Hilliard not participating.